*822 OPINION.
Steknhagen:
The Commissioner, in determining the deficiency, stated that 100 percent of the gain realized in the 1937 distribution of the assets of the Queen Lane Investment Co. should be taken into *823 account in computing net income in accordance with section 115 (c), Revenue Act of 1936.[1] No facts are stated to throw light on the ground of the determination. The petitioner admits that the distribution was one in liquidation and contends that under section 115 (c) only 30 percent of the gain is taxable. The argument of both parties is focused upon the question whether the liquidation, which admittedly was taking place in 1937, began in 1935. The respondent treats the deficiency determination as equivalent to holding that the distribution in question for 1937 was but a step in a process of liquidation which began in 1935, and upon this postulate reasons that the 1935 plan of liquidation did not contemplate its consummation within two years and hence that the distribution in 1937 is taxable to the extent of 100 percent of the gain.
The petitioner, adopting the respondent’s treatment of the deficiency determination as a determination of all the facts necessary to support it, has undertaken to establish that the 1935 and 1936 distributions were not in liquidation and that the distribution in 1937 was the first such distribution in a plan which was to be concluded within two years. The evidence supports the petitioner’s contention. The directors of the corporation were fully alert to the effects of their conduct on Federal and state taxes of both the corporation and its shareholders. They had been fully advised by counsel. The reasons for the distributions of 1935 and 1936 out of special capital account had to do entirely with taxes of Pennsylvania. The directors gave consideration in 1935 and 1936 to the advisability of liquidation and decided against it. They intended to make a distribution of the sort described in section 115 (d). There is no evidence to indicate that liquidation was intended or was consciously or inadvertently being carried out. Nothing was done looking to a winding up of business; there was no cessation of normal activities; aside from a reduction of the assets by the distributions, *824 there was nothing to indicate liquidation, and there was no thought of canceling shares. If the issue before the Board today were the applicability of section 115 (c) to the distributions of 1935 and 1936, for the purpose of determining tax for those years, the evidence would establish that the distributions were not in liquidation and that the section was not applicable.
The evidence shows why the liquidation did not begin until 1937. It was not until then that the franchise tax of Pennsylvania became so burdensome as to arouse an inquiry by the directors as to whether it was cheaper, from a tax standpoint, to continue the existence of the corporation with the new burden of Pennsylvania taxes or to liquidate the corporation with the consequent immediate burden of taxes upon the shareholders. As a result of that inquiry and upon advice, the directors decided to liquidate. This was the first time such a decision was made. The character of a distribution as one in liquidation is determinable as a fact upon all the evidence, including evidence of the directors’ intention and the attendant circumstances, Tootle v. Commissioner, 58 Fed. (2d) 576, affirming 20 B. T. A. 892; Gossett v. Commissioner, 59 Fed. (2d) 365, affirming 22 B. T. A. 1279; Helvering v. Edison Securities Corporation, 78 Fed. (2d) 85, affirming 29 B. T. A. 483. The conclusion has been reached that the distributions of 1935 and 1936 were not distributions in liquidation; that there were no plan for liquidation and no liquidation activities prior to 1937; and that the distribution made in 1937 was a distribution in liquidation under a plan to be completed within two years from the close of 1937.
The petitioners now concede that they should have used $154,742.74 as the basis for the 30 percent gain instead of the $147,724.91 which they used. Except for this change, the Commissioner’s determination is reversed.

Decision will be entered wnder Rule 50.

 (c) Distributions in Liquidation.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. Dor the purpose of the preceding sentence, “complete liquidation” includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. In the ease of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.